**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DATA EXCHANGE SYSTEMS, LLC,

    Plaintiff,

    v.

METROLIST SERVICES, INC.,

    Defendant.
_____/

No. C 05-2327 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction came on for hearing before this court on August 24, 2005. Plaintiff appeared by its counsel Ian C. Ballon, and defendant appeared by its counsel Michael A. Duncheon. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion as follows and for the reasons stated at the hearing.

## INTRODUCTION

This is an action brought under the Declaratory Judgment Act, seeking a judicial declaration that plaintiff Data Exchange Systems, LLC ("DES") has not infringed any federally registered copyright owned by defendant MetroList Services, Inc. ("MetroList").

DES is an application service provider that provides website hosting services to real estate professionals. According to the complaint, DES offers two software tools to title and

escrow companies in the real estate business.  The "DES Search Engine Tool" allows title and escrow companies to identify prospective real estate agent customers by searching publicly available websites for information that is compiled in an easy-to-read format.  The "DES Digital Sales Assistant Tool" allows title and escrow companies to assist real estate agents by automating various routine procedures online.  DES asserts that it offers this tool only to title and escrow companies, who in turn offer it only to those real estate agents who subscribe to an online Multiple Listing Service ("MLS") account and have a valid username and password.  According to DES, individuals who do not have a username and password – i.e., members of the general public – cannot use DES' software to gain access to any MLS database.

DES asserts that MetroList, which owns and operates the MLS in the Sacramento region of Northern California (Counties of Sacramento, Placer, El Dorado, Yolo, San Joaquin, Stanislaus, and part of Merced), has over the last several months contacted customers of DES to inquire about DES' business activities.  DES claims that MetroList has also contacted DES directly and asserted that DES is improperly using MetroList data without authorization.  DES alleges that MetroList owns at least four federal copyright registrations, which it lists in the complaint.  DES filed this action seeking a declaration that it is not committing copyright infringement or violating any other laws with regard to MetroList.

MetroList now moves to dismiss the complaint for lack of subject matter jurisdiction, and for failure to state a claim, arguing that there is no present controversy, and that there is no federal claim at issue.  MetroList also seeks declaratory relief abstention, on the ground that DES is a defendant in a suit filed by MetroList in the Superior Court of California, County of Contra Costa, <u>MetroList Services, Inc. v. LeadSenders, LLC</u> (No. C-04-01137, filed June 14, 2004).  MetroList claims that in filing the present action DES is seeking to litigate claims already pending between DES and MetroList in a parallel state action in which the Superior Court judge has already issued a preliminary injunction.

The complaint in <u>MetroList v. LeadSenders</u> alleges that the defendants misappropriated proprietary MLS information maintained by MetroList, and asserts state law

2

causes of action for misappropriation of trade secrets, conversion, unfair business practices, and conspiracy. It seeks a preliminary and permanent injunction prohibiting defendants from unauthorized access and use of MetroList's proprietary MLS information, based on those state law claims. The complaint does not allege a federal copyright infringement claim.

DES was not named as a defendant in the original complaint in MetroList v. LeadSenders. However, one of the originally-named defendants was Eric G. Swallow, formerly a manager of DES, and at some point DES' agent for service of process. On December 22, 2004, the Superior Court issued a preliminary injunction, barring Swallow and the other defendants from misappropriating MetroList's MLS data.

On May 13, 2005, MetroList amended the state court complaint to join DES as a defendant (previously sued as Doe 1).[1] Three weeks later, DES filed the complaint in the present action. DES claims that it did not receive the summons and amended complaint from its agent prior to filing this lawsuit, and that MetroList's counsel never mentioned the amended complaint to counsel for DES during the period between May 13, 2005, and June 13, 2005.

## DISCUSSION

A.  Legal Standards

   1.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction. See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).

The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists when challenged under Fed. R. Civ. P. 12(b)(1). See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001). The defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of

---

[1] MetroList recently filed a motion for preliminary injunction against DES in the state court action.

3

jurisdiction on the facts of the case.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

Where there is a facial attack on the court's subject matter jurisdiction (where the defendant merely challenges the sufficiency of the allegations of subject matter jurisdiction) the standard is akin to the standard applied in determining a Rule 12(b)(6) motion.  That is, the factual allegations are presumed true, and the motion is granted only if the plaintiff does not set forth the elements necessary for subject matter jurisdiction.  See Doe v. Schachter, 804 F.Supp. 53, 57 (N.D. Cal. 1992).

A motion to dismiss for lack of subject matter jurisdiction may also be a "speaking motion" in which the defendant actually challenges the existence of subject matter jurisdiction.  In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill Publ'g v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  The plaintiff must establish jurisdiction with evidence from other sources, such as affidavits or depositions.  See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2005) §§ 9:77, et seq.

2. Declaratory Judgment Act

The Declaratory Judgment Act creates a remedy, but does not create an independent basis for federal jurisdiction.  The party seeking relief must establish subject matter jurisdiction.  28 U.S.C. § 2201.  To do this, the party must show an "actual controversy" regarding a matter within federal court subject matter jurisdiction.  See Schwarzer, et al., §§ 10:6, et seq.  "The 'actual controversy' requirement of the [Declaratory Judgement] Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution."  Societe de Conditionnement en Aluminum v. Hunter Eng'g Co., Inc., 655 F.2d 938, 942 (9th Cir.1981) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937)).  For an actual controversy to exist in a declaratory judgment action, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

B.   Motion to Dismiss

MetroList argues that the complaint does not allege an actual controversy arising under federal law, and that there is therefore no federal subject matter jurisdiction. MetroList asserts in the alternative that the court should exercise its discretion to abstain and dismiss this action, because parallel proceedings involving the same issues and parties are pending in the Contra Costa Superior Court.

In opposition, DES argues that a real controversy existed at the time it filed the complaint for declaratory relief because it had a real and reasonable apprehension that it would be subject to liability if it continued to offer the DES software tools. DES points to a number of occurrences that it claims support its belief that there was a real dispute between the parties.

First, DES claims that on March 9, 2005, MetroList's president Tom Bedee ("Bedee") called DES' manager Robert Hoff ("Hoff"), and asked him several questions about DES' software tools. Hoff states in a declaration that Bedee asked him whether DES' software tools access MetroList's MLS database. Hoff told Bedee that they do not, but rather "comb through publicly available websites and retrieve non-copyrightable information from publicly-available locations." Hoff says Bedee "made a point" of informing him that "any information that is or was once in the MetroList database is copyrighted." Hoff says that Bedee was "stern" and spoke in a "threatening tone," which made Hoff uncomfortable. Hoff says it was "clear" to him that "a dispute existed between DES and MetroList." At the end of the call, according to Hoff, Bedee said he would "look into the matter" and get back to him (though he never did). Hoff asserts that based on Bedee's statements and tone during the call, and on the fact that Bedee never called him back, Hoff "truly believed" there was an unresolved dispute between DES and MetroList. Declaration of Robert Hoff in Support of Plaintiff's Opposition ("Hoff Decl."), at ¶¶ 15-17.

Hoff also states that around the time of Bedee's call (March 9), he (Hoff) learned that MetroList was contacting DES' customers "behind DES' back" and inquiring about DES and its software tools. One of those customers was a Dan Sterger ("Sterger"), a sales

5

representative for Fidelity National Financial, Inc., in Placer County. Hoff claims that Sterger sent him a copy of an e-mail he received from Bedee, though Hoff does not attach a copy of the e-mail and DES does not include a declaration from Sterger. Hoff Decl. ¶ 18.

Another one of those customers was Michelle Skupic ("Skupic"), a Vice President and County Manager for Fidelity National Title Insurance Company. Hoff Decl. ¶ 19. DES includes a declaration from Skupic, in which she states that she received a call from Bedee approximately six to eight months ago (late 2004 or early 2005), asking questions about DES and its services, and that she received a call from Joel Levy ("Levy"), DES' outside counsel, in mid-May 2005, also asking about DES and its services. In both cases, Skupic told the callers that she was "unsure about what he was asking." She then sent DES an e-mail informing them about the calls. She says that around the time of her call from Levy, two Fidelity sales managers told her they had been contacted by representatives from MetroList. Declaration of Michelle Skupic in Support of Plaintiff's Opposition, at ¶ 2-5.

Hoff says that when he learned that MetroList had been contacting DES' customers, he became concerned. He says it was "clear" to him that the purpose of the calls was to suggest to DES' customers that DES was infringing MetroList's copyrights. He claims that the act of making these suggestions to DES' customers "threatens to disrupt DES' business." Hoff Decl. ¶ 20.

Hoff says that on June 30, 2005, he was informed by Matthew Ferry ("Ferry"), a DES sales representative, that a representative from Chicago Title in Sacramento had brought up the "dispute" between DES and MetroList in a conference call about DES' products. According to Hoff, the purpose of the call was to attempt to persuade the various representatives to hire Ferry to train their salespeople on how best to use the DES tools. Hoff claims that the Chicago Title representative declined to hire Ferry because he was concerned about the "dispute" between DES and MetroList. Hoff says he later learned that the Chicago Title representative was informed about the "dispute" by MetroList. Hoff Decl. ¶ 22.

DES provides a declaration from Ferry, in which Ferry confirms Hoff's statement that he had hosted a conference call with representatives from various title companies. He states

that during the call a representative from Sacramento brought up the "legal dispute" between Metrolist and DES, and asked about the status of the dispute. Ferry states that "the fact that someone would raise this issue during a conference call concerning DES and its products suggested to me that Metrolist had been contacting DES' customers." Ferry does not state that the Chicago Title representative declined to hire him because of concerns about the "dispute," or that the representative indicated that he had been informed about the "dispute" by MetroList. Declaration of Matthew Ferry in Support of Plaintiff's Opposition, at ¶¶ 2-3.

Based on the above incidents – 1) Bedee's statement to Hoff that DES' software tools improperly accessed MetroList's copyrighted database, 2) the way Bedee behaved during the call, and the fact that he failed to follow up afterwards as promised, 3) the fact that MetroList contacted and "implicitly threaten[ed]" DES' customers – DES claims that it had a real and reasonable apprehension that it would be subject to liability if it continued to offer its two software tools, and that it then filed the present action on June 8, 2005. DES claims that on June 10, 2005, its counsel sent an e-mail to MetroList's counsel informing them of the filing and suggesting that the parties schedule a conference call. On June 13, 2005, MetroList's counsel responded in an e-mail, stating "for the first time" that DES had been added as a party in the state court dispute.[2]

DES also argues that federal court is the appropriate place for this dispute, because the fundamental issue in this case concerns federal copyright law, based on MetroList's "repeated references" to its copyrighted compilation, in the conversation between Bedee and Hoff, and in MetroList's license agreements with MLS subscribers. DES asserts that these "representations" have been "confirmed" by the existence of no fewer than four federal copyright registrations (listed by DES in the complaint in the present action). DES notes that

---

[2] DES claims that MetroList "secretly amended its complaint" in the state court action on May 13, 2005 to substitute DES as a "Doe" defendant. DES asserts that although MetroList asserted that DES had been served on May 25, through its registered agent, DES had not in fact received any papers because the agent "misdirected" them. DES also contends that service was ineffective because the summons did not comply with the requirements of California law with regard to serving "Doe" defendants, although DES apparently did not contest service in the state court action.

7

1  MetroList has not <u>denied</u> that it intends to sue DES for copyright infringement, and asserts that
2  MetroList has suggested that it might do just that (citing to MetroList's opening brief in this
3  motion, where MetroList states, "If MetroList chooses at a future date to amend its state court
4  action to assert a federal copyright claim under 28 U.S.C. §1338(a), or some other federal
5  question claim, DES may [then] have a basis to attempt to remove the case to federal court.").

6        DES argues further that it can obtain complete relief only by filing an action in federal
7  court, because the state court action is narrowly tailored to address only the acts of
8  LeadSenders – which provides expired MLS listings to real estate agents – and nowhere
9  addresses DES' provision of specific software tools to title and escrow agents.  DES
10 contends that the state court complaint seeks to prevent defendants from providing expired
11 MLS information to LeadSenders' customers without the consent of MetroList, and seeks to
12 prevent the defendants from improperly accessing the MLS and using MLS data.  DES
13 asserts that these claims have nothing to do with DES' operation of its own business.

14       In reply, MetroList reiterates that DES fails to plead or show an "actual controversy"
15 arising under federal law, i.e., under the Copyright Act.  MetroList contends that DES has not
16 shown that MetroList's actions caused DES to have a "real and reasonable apprehension"
17 that it would be subject to liability under the Copyright Act.  MetroList argues that DES
18 provides no evidence that MetroList threatened a copyright infringement suit, or that any
19 MetroList representative ever said to Hoff, Skupic, Ferry, or anyone else that DES products
20 infringed on MetroList's copyrights or that MetroList would take legal actions to enforce its
21 copyrights.

22       MetroList argues that it is entitled to investigate if it has information that others, such as
23 DES, are committing the same state law violations as the defendants in an ongoing state
24 action.  MetroList contends that asking Skupic questions about DES' products cannot be
25 interpreted as an assertion by MetroList that its copyrights were being infringed, much less a
26 threat of a copyright infringement suit.  MetroList argues further that simply asking Hoff
27 whether DES' products access the MetroList database (which Hoff denied) or informing Hoff
28 that any information that is or ever was in the MetroList database is copyrighted is not the

8

same as asserting that DES' products infringe on MetroList's copyrights or that MetroList intends to take legal action against DES for copyright infringement. Nor does Ferry's claim that an unidentified individual asked about the status of a "dispute" between DES and MetroList constitute a threat to bring a copyright infringement suit.

MetroList argues that its inquiries to DES and DES customers show nothing more than an investigation, based on MetroList's concern that DES' software products were accessing MetroList's MLS information. MetroList emphasizes that there is nothing in any of DES' evidence showing that MetroList employees ever told anyone that DES' products infringed MetroList's copyrights. Thus, MetroList argues, there was no objectively real and reasonable basis for DES to fear a copyright infringement suit from MetroList.

MetroList contends that it references its copyrights in its participant agreements and elsewhere, and argues that these references are perfectly appropriate and nothing more than an assertion that it has copyright in certain material. MetroList argues that such references do not create an inference that MetroList has asserted that DES' products infringe those copyrights.

The court finds that the motion must be GRANTED. While there is plainly a controversy between MetroList and DES, the controversy does not involve a federal copyright claim, and DES has neither established the existence of an actual controversy involving federal copyright law, nor shown that it had a real and reasonable apprehension that it would be subject to liability under the Copyright Act.

None of the events DES describes – the conversation between Hoff and Bedee, the contacts of DES' customers by MetroList representatives, the question raised by the Chicago Title representative regarding the "status of the dispute" between DES and MetroList – indicate that MetroList communicated any intention to file a copyright infringement suit against DES. There is no evidence that MetroList ever accused DES of copyright infringement, or that any MetroList attorney or other MetroList representative ever wrote a letter threatening an infringement action or ever made such a representation orally. Stating that MetroList owns copyrights is not the same as "asserting" those copyrights.

In accordance with the foregoing, the court finds that the complaint must be DISMISSED for lack of subject matter jurisdiction. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 26, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge